IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

———————————

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                                         No. 1:18-CR-2426-WJ

DANIEL CAPEHART,

      Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE GOVERNMENT'S MOTION IN LIMINE TO INTRODUCE EVIDENCE PURSUANT TO RULE 404(b)**

THIS MATTER comes before the Court upon the United States' Notice of Intent to Introduce Evidence Under Rule 404(b) and Motion in Limine to Introduce Evidence Pursuant to Rule 404(b), both filed September 28, 2020 (Docs. 62 & 63) (collectively, the "Motion"). The Court held a hearing on the Motion on December 29, 2020 (Doc. 84). The Government seeks to offer certain evidence in its case-in-chief in the above captioned case. For the reasons discussed below, the Court hereby GRANTS IN PART and DENIES IN PART the Government's Motion. Assuming the Government can lay the required foundation for admissibility, it may use Exhibits 1, 2, 15, 17, 18, 19, 20, and 21 for any proper purpose, subject to appropriate limiting instructions. However, the Court hereby limits the use of Exhibits 3–14 & 16 to rebuttal evidence, admissible only if the Defendant opens the doors to such use.

**Background**

Defendant, who was a New Mexico State Police officer during the relevant time period in the Indictment, is charged with three counts of drug distribution: (1) knowingly and intentionally distributing marijuana on June 21, 2018; (2) knowingly and intentionally distributing marijuana

within 1,000 feet of a playground or public school on June 23, 2018; and, (3) knowingly and intentionally distributing five grams and more of methamphetamine within 1,000 feet of a playground or public school on June 29, 2018. *See* Doc. 18 (Indictment).

In June of 2018, state and federal law enforcement were informed that Defendant had been engaging in communication with two women, Jane Doe 1 and CS. Jane Doe 1, who was 16 years old at the time, met Defendant after he conducted a traffic stop on a vehicle in which she was a passenger. At the traffic stop, Jane Doe 1 gave her contact information to Defendant after he requested it. CS met Defendant the prior year when, during a traffic stop, he arrested CS for driving related offenses after discovering approximately fourteen grams of methamphetamine in the vehicle. Both Jane Doe and CS reported to law enforcement that they had been receiving communication from Defendant that made them uncomfortable because of the flirtatious or sexual tone of said communication.

On June 19, 2018, San Juan County Sheriff's Office Detective Erik Barlow ("Detective Barlow") met with the father of Jane Doe 1 regarding Defendant's communication with his daughter. Jane Doe 1 gave Detective Barlow permission to use her cell phone to continue communicating with Defendant under the pretense of being Jane Doe 1. The subsequent communications between Defendant and undercover officers allowed law enforcement to observe Defendant engaged in conduct that gave rise to Counts 1 and 2 of the Indictment.

On June 28, 2018, CS spoke with the FBI about her communication with Defendant and consented to Special Agent Kalon Fancher ("SA Fancher") using her cell phone to continue communicating with Defendant under the pretense of being CS. The subsequent communications between Defendant and undercover officers allowed law enforcement to observe Defendant engaging in conduct that gave rise to Count 3 of the Indictment.

Defendant was arrested on June 29, 2018. During his post-arrest interview with SA Fancher

and Sergeant Mitch Goins, and after being advised of his *Miranda* rights, Defendant admitted to

distributing the marijuana to Jane Doe-1 and the methamphetamine to CS, but Defendant claimed

that his contact with Jane Doe-1 and CS was for the purpose of cultivating sources that might lead

to further police investigations. *See* Ex. 19 (Transcript of Interview).

On September 28, 2020, the Government filed the instant Motion, seeking to admit the

following categories of evidence[1]:

- Exhibit 1: the text messages and photographs exchanged between Defendant and Jane Doe 1 (or the undercover officer impersonating Jane Doe 1)
- Exhibit 2: the text messages and photographs exchanged between Defendant and CS (or the undercover officer impersonating CS)
- Exhibits 3 and 16: Two photographs that suggest Defendant in "peeping Tom" conduct. One photograph shows a clothed woman's backside as she walks through a parking lot. The other photograph shows another clothed woman's backside as she stands at a podium at the Magistrate Court in Farmington, NM.
- Exhibit 4: A nude "selfie" photograph of Defendant.
- Exhibit 5 and 7: Two photographs, each depicting a woman in a state of undress. Both photographs were taken near the intersection of Interstate 25 and Gipson Boulevard in Albuquerque, NM on May 17, 2017.
- Exhibit 6: Contact information for the woman depicted in the Exhibit 5 photograph.
- Exhibit 8: A photograph of a woman in a partial state of undress and an accompanying phone number. The photograph is a "screenshot" of a webpage located at farmington.backpage.com.
- Exhibit 9: A text message Defendant sent to the phone number shown in Exhibit 8. The message reads "Ok gorgeous."
- Exhibit 10: A photograph of a woman in a partial state of undress with the text caption #Payme and an accompanying phone number.
- Exhibit 11: A text message Defendant sent to the phone number shown in Exhibit 10. The message appears to reference a hotel or motel room number.
- Exhibit 12: A text message sent by Defendant to an unknown phone number. The message appears to show displeasure with a woman's "ad."

---

[1]    All items of evidence were obtained through a search of Defendant's cell phone. The Government redacted, where relevant, all nudity from the photos and personal information from the text exchanges. Some photo exhibits are accompanied by "exit data" showing the time at which and location where each photo was taken. These exhibits contain eleven photographs saved to Defendant's cell phone between March 15, 2016 and May 11, 2018 in an app known as the "Private Photo Vault," which is password protected and advertised as "the best and most private photo and video app for iPhone." Doc. 63 at 8.

- Exhibit 13: Text messages sent by Defendant to a known but unidentified woman, dated June 11, 2017 to May 1, 2018.
- Exhibit 14[2]: Text messages between Defendant and his wife that demonstrate marital discord.
- Exhibit 15: a partially nude "selfie" photograph of Defendant in which he covers his groin with a garment. Defendant sent this photograph to CS's cell phone on June 27, 2018.
- Exhibits 17–18: Two photographs related to Jane Doe 1 that Defendant saved to his Private Photo Vault. One photograph shows the screen of Defendant's police computer on June 15, 2018. The screen displays a picture of Jane Doe 1 along with her personal identifying information and her address. The other photograph is a "selfie" of Jane Doe 1 that an undercover officer, with Jane Doe 1's consent, sent Defendant on June 21, 2018 after Defendant made a request for such a photograph.
- Exhibit 19: Transcript of Defendant's post-arrest interview with SA Fancher and FBI Task Force Officer Mitch Goins.
- Exhibit 20: Three recordings of phone calls between Defendant and an undercover officer impersonating Jane Doe 1.
- Exhibit 21: A recording of a phone call between Defendant and CS.

On December 18, 2020, Defendant filed his Response to the Motion, objecting to the proffered evidence to the extent that it purports to show that Defendant had or sought sexual relationships with women other than his wife. The Response does not object to admitting portions of the above-listed evidence that deal with drugs or purported plans to deliver drugs. Doc. 80 at 3. The Government filed its Reply on December 25, 2020. Doc. 81.

**Legal Standard**

The introduction of evidence of other acts is governed by Fed. R. Evid. 404(b) and the factors set forth in *Huddleston v. United States*, 485 U.S. 681 (1988). Rule 404(b) provides:

(1) Prohibited Uses. Evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

---

[2]     At the December 29th hearing, the Government stated that it considers the text messages contained in Exhibit 14 to be privileged. Accordingly, it will only offer this evidence if Defendant takes the stand and gives testimony about the nature of quality of his marital relationship.

The *Huddleston* factors recognize that for evidence of other acts to be admissible: (1) the evidence must be offered for a proper purpose under Rule 404(b); (2) it must be relevant under Rule 401; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice under Rule 403; and (4) upon request, the trial court must instruct the jury pursuant to Rule 105 that the other-acts evidence is to be considered only for the proper purpose for which it was admitted. *See Huddleston*, 485 U.S. at 691-92; *see also United States v. Rodella*, 804 F.3d 1317, 1333 (10th Cir. 2015) (internal citations omitted).

## Discussion

Defendant does not challenge the authenticity of any of the evidence. Further, at the December 29th hearing, defense counsel acknowledged that evidence in the Government's Exhibits involving Jane Doe 1 and CS is relevant to the Government's case-in-chief and is being offered for a proper purpose under Rule 404(b). Defendant has not raised any objections to the admissibility of Exhibit 19, the transcript of the post-arrest interview. Based on its review of these exhibits and the parties' arguments, the Court finds, subject to the requirement that the Government lay a proper foundation for admissibility, that Exhibits 1, 2, 15, 17, 18, 19, 20, and 21 are admissible at trial[WPJ1][CI2]. This finding is based on the Court's determination that this evidence satisfies the *Huddleston* factors. All portions of Defendant's communications with Jane Doe 1 and CS relate directly to proving an element of the charged crimes. *See* Fed. R. Evid. 401. The sexually suggestive portions challenged by Defendant are being offered to demonstrate the motive and intent behind Defendant's conduct, as well as a lack of mistake. The high probative value of the challenged portions of Defendant's exchanges with Jane Doe 1 and CS is not substantially outweighed by the danger of unfair prejudice or ability to mislead a jury. *See* Fed. R. Evid. 403. The jury will necessarily hear that Defendant was communicating with Jane Doe 1 and

CS in order to coordinate the delivery of the drugs at issue, and the challenged portions of these communications merely gives jurors a complete pictures of the factual circumstances surrounding the charged crimes.

Having narrowed the scope of its inquiry, the Court will now address the admissibility of Exhibits 3–14 & 16 (the "contested exhibits"). The Government argues that the contested exhibits satisfy all four *Huddleston* factors. The Court will not address the fourth factor because both parties agree that the Court must issue a limiting instruction at Defendant's request. The Government argues that it is offering the contested exhibits for a proper purpose under Rule 404(b), namely, to show (a) that Defendant's motive in distributing the marijuana and methamphetamine as charged was to advance a sexual relationship with Jane Doe 1 and CS, (b) that Defendant's acts of distributing marijuana to Jane Doe 1 and methamphetamine to CS were not the result of mistake or accident based on Defendant's inexperience as a police officer; and (c) that Defendant acted with knowledge and intent in illegally distributing the drugs. Defendant submits that the Government does not need to prove Defendant's motive or a lack of mistake. Defendant is correct but, given the posture of this case, it would be proper for the Government to use evidence demonstrating a motive or lack of mistake to directly rebut Defendant's explanation for his drug distributing activities. This evidence, if offered in the appropriate context, would not make a rote propensity or bad character argument. Therefore, the Court finds that the contested exhibits are being offered for a proper purpose under Rule 404(b).

However, the Court must also rule on the relevancy of the contested exhibits and engage in the Rule 403 balancing test. Evidence is relevant if it "make[s] a necessary element of the offense more or less probable." *United States v. Henthorn*, 864 F.3d 1241, 1249 (10th Cir. 2017). Based on its review of the exhibits, the Court tends to agree with Defendant that these contested

items of evidence are not relevant to the Government's case-in-chief. The contested exhibits suggest that Defendant has a history of infidelity, including sexual encounters with alleged prostitutes, but these exhibits do not suggest that Defendant has a history of supplying drugs to the women he communicated with or using drugs to incentivize these women to start or continue a sexual relationship with him. Consequently, this evidence is not probative of whether Defendant possessed the requisite criminal intent for the charged offenses. At trial, these exhibits could become relevant if the defense opens the door through arguments placing Defendant's history of fidelity, or even his ability to enter an extramarital relationship, at issue.

Even if these exhibits become relevant at trial, the Court would have to engage in the Rule 403 balancing test, which largely hinges on the probative value of this evidence. The Government contends that Defendant's post-arrest admissions limit his defense to arguing the absence of criminal intent. The Government predicts that the defense will attempt to show the jury that Defendant's drug distribution activities were the result of an ill-planned police investigation and general lack of experience or common sense. Such a defense, according to the Government, would greatly increase these exhibits' probative value because they would show the jury that the flirtatious messages and sexual propositions that Defendant sent to Jane Doe 1 and CS were genuine, rather than a "cover" for his purported investigation. Defense counsel argues that, in light of the abundance of admissible evidence against Defendant on this point, particularly in the form of his plainly inappropriate communications with Jane Doe 1 and CS indicating his desire for a "quid pro quo" exchange of drugs for sexual favors, the probative value of the contested exhibits is greatly reduced.

The Court notes that the post-arrest interview transcript is peppered with statements in which Defendant swears he would never act on the romantic or sexual scenarios contemplated in

his communications with Jane Doe 1 and CS. The contested exhibits would call into question the sincerity of those statements. However, until it hears the arguments Defendant presents at trial, the Court is unable to properly determine whether the probative value of the contested exhibits is substantially outweighed by the danger of unfair prejudice or ability to mislead the jury.

Finally, at the hearing, the Government requested that the Court rule on whether the Government could offer testimony regarding the location of Exhibits 17 and 18. This ruling depends on whether the contested exhibits become admissible at trial. At this point, the Government may offer testimony stating that these photos were kept on Defendant's personal cell phone in an app known as "Private Photo Vault." The testimony may describe the nature of this app and its security features, but the Government may not offer testimony as to the nature of any inadmissible photographs stored on the app.

## Conclusion

**Therefore,** the Government's Motion (**Docs. 62 & 63**) is hereby **GRANTED IN PART**, as to Exhibits 1, 2, 15, 17, 18, 19, 20, and 21, which the Court rules are admissible at trial once the Government lays the proper foundation for their admission, and **DENIED IN PART** as to Exhibits 3–14 & 16, which the Court rules are currently inadmissible. However, the Government may move to admit some or all of this evidence at trial if the Government believes that Defendant has opened the door to its use as rebuttal evidence.

**IT IS SO ORDERED.**

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE