# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

UNITED STATES OF AMERICA,

     Plaintiff,

     v.                                   No. 1:18-CR-2426-WJ

DANIEL CAPEHART,

     Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL

THIS MATTER comes before the Court upon Defendant Daniel Capehart's Motion for a New Trial, filed July 27, 2021 (**Doc. 149**). Pursuant to Federal Rule of Criminal Procedure 33, Defendant moves the Court to vacate his conviction and grant him a new trial. The Court ordered expedited briefing on this matter, *see* Doc. 150, and it is now fully briefed and ripe for ruling. Docs. 153 (Response) & 154 (Reply). The Court finds that the Motion is not well-taken, and, therefore, it will be **DENIED**.

## Background

On July 27, 2018, a federal grand jury returned a three-count Indictment against Defendant, charging him with knowingly and intentionally distributing marijuana on June 21, 2018, knowingly and intentionally distributing marijuana within 1,000 feet of a playground or public school on June 23, 2018, and knowingly and intentionally distributing five grams and more of methamphetamine within 1,000 feet of a playground or public school on June 29, 2018. Doc. 19.

Defendant's case went to trial, and on the morning of July 19, 2021, jury selection commenced in this matter. After the completion of *voir dire*, the venire panel was excused from

the courtroom. The Parties then exercised their preemptory challenges and together the Court and the Parties reviewed which of the twelve members of the venire panel would be seated on the jury and which two would be the alternates for this trial. In its Response, the Government represents that neither Party exercised a peremptory challenge to any of the seated jurors. Doc. 153 at 2 n. 2. Defendant does not controvert or contest this fact in his Reply. When the venire panel returned to the courtroom, the Court then had the selected fourteen jurors sit in the jury box to be sworn in. The two alternates were seated in the jury box as Juror Number 2 (T.H.) and Juror Number 13 (J.S.). Both T.H. and J.S. were unaware of their status as an alternate. The Court purposefully chose not to seat the alternates together at the end of the row so that it was not obvious which of the jurors were the alternates. This was done to ensure that all members of the jury would participate with the same level of attention. *See* Doc. 151 (Transcript of July 23, 2021 Status Conference).

The Court then swore the jury in, and testimony on this case commenced on the afternoon of July 19, 2021. Over the next few days, the United States presented numerous witnesses who described the defendant's delivery of marijuana on two occasions (June 21 and June 23, 2018) and his delivery of more than five grams of methamphetamine on June 29, 2018. The United States also presented testimony establishing that the June 23rd and June 29th deliveries occurred within 1,000 feet of a school and a playground.

On July 22, 2021, after instructions by the Court and closing arguments by counsel, the Court, intending to dismiss both alternates, dismissed two jurors, Juror Number 2 (T.H.) and Juror Number 12 (J.T.). Unbeknownst to the Court and the Parties, a clerical error resulted in one of the jury members, Juror Number 12 (J.T.), being excused, while one of the alternates, Juror Number 13 (J.S.), was kept for deliberations. The twelve jurors then retired to the jury room and

commenced deliberations shortly before noon on July 22, 2021. Juror Number 13 (J.S.) was elected foreperson, and the jury returned a unanimous verdict of guilty on all counts. The Court then excused the jurors and Defendant was immediately remanded into custody. Later that afternoon, the Court realized that it had made an inadvertent clerical error and dismissed the wrong second alternate—Juror Number 12 (J.T.) had been dismissed in place of the designated second alternate, Juror Number 13 (J.S.). The next morning, on July 23, 2021, the Court convened a status conference and informed the Parties of the error. *See* Doc. 151. The Court explained that the dismissal of Juror Number 12 (J.T.) instead of Juror Number 13 (J.S.) was based on a mislabeled seating chart prepared by court staff,[1] which mistakenly identified the alternates as Juror Number 2 (T.H.) and Juror Number 12 (J.T.). The seating chart should have identified Juror Number 2 (T.H.) and Juror Number 13 (J.S.) as the alternates. The record shows that this mistake went unnoticed by the Parties, even though both the Government and Defendant were aware of which jurors had been designated as the alternates during jury selection.[2] As such, no objection was raised to the Court's dismissal of Juror Number 12 (J.T.) instead of Juror Number 13 (J.S.). *See* Doc. 149 at 1, ¶ 3; Doc. 153 at 3.

Defendant argues that his case was submitted to a jury of only eleven properly selected jurors, in violation of Federal Rule of Criminal Procedure 23. He further asserts that the unauthorized presence of an "alternate" juror during deliberations violated the sacrosanct secrecy and privacy of the deliberative process. Defendant contends that these deficiencies give rise to

---

[1]       The Court filed this seating chart, which contains the juror's names as a sealed exhibit (Doc. 147) to the Telephonic Status Conference.

[2]       Counsel were provided a grid chart for memorializing for cause and peremptory challenges, as well as the Court's ruling thereon. The Court therefore assumes that, given their level of experience and procedural knowledge, Defense and Government counsel noted on this chart that J.T. was seated as a regular juror and J.S. was seated as an alternate. Further, as discussed in the footnote above, both Defense and Government counsel had the same copy of the seating chart as the Court. The Court's copy of this seating chart included handwritten "X" marks, made by the clerk, next to the names of Juror Number 2 (T.H.) and, erroneously, Juror Number 12 (J.T.).

either a *per se* plain error or a structural error in the proceeding. Neither framework would require him to show resulting prejudice. As discussed in greater detail below, the Court rejects this argument, and it will instead review this matter using the contemporary plain error analysis, keeping in mind Defendant's arguments that the mistake affected his substantial rights and seriously affected the fairness and integrity of his trial.

**Discussion**

### I.    What Occurred at Defendant's Trial Does Not Constitute a Per Se Plain Error or Structural Error.

In his Motion, Defendant's primary argument is that the inadvertent replacement of one of the original jurors with an alternate just prior to the jury retiring for deliberations is a *per se* plain error that warrants vacating his conviction and granting him a new trial without any showing of prejudice. In support, Defendant cites a cluster of federal appellate opinions from across the country. The first of these cases, *United States v. Beasley*, comes out of our Circuit. 464 F.2d 468 (10th Cir. 1972). In *Beasley*, twelve properly selected jurors retired to deliberate, and one of the alternates went with them and deliberated for about twenty minutes before the court realized that the alternate had not been discharged. The Tenth Circuit held that this error was grounds for a mistrial, noting that once the duly selected jurors had retired to begin deliberations, "the alternate then became as any other stranger to the proceedings[.]" *Id.* at 469. The Motion then goes on to cite *United States v. Chatman*, 584 F.2d 1358 (4th Cir. 1978) and *United States v. Watson*, 669 F.2d 1374 (11th Cir. 1982). In *Chatman*, an opinion which relies on *United States v. Virginia Erection Corporation,* 335 F.2d 868 (4th Cir. 1964), the Fourth Circuit held that the presence of an alternate juror in the jury room during part of the deliberations was a *per se* plain error. 584 F.2d at 1361–62. In *Watson*, the Eleventh Circuit expressed the view that if an alternate participates

in deliberations, "[a] mistrial or reversal is required if there is a reasonable possibility that the alternate in any manner affected the verdict." 669 F.2d at 1392.

The first flaw in Defendant's request for the Court to rely on these cases in ruling on his Motion is that *Beasley*, *Chatman,* and *Watson* are not factually analogous to the issue at bar. There was no "thirteenth juror" participating in deliberations at Defendant's trial, which provides a ready distinction. *See Beasley*, 464 F.2d at 469 ("This appeal raises the issue as to the thirteenth juror . . . ."); *Chatman*, 584 F.2d at 1361 ("[A] thirteenth juror (an alternate who had not been excused) retired with the regular jurors."); *Watson*, 669 F.2d at 1389 ("The alternate, through inadvertence, was not excused when the jury retired to deliberate. Approximately thirty-five minutes elapsed before this fact was called to the District Court's attention."). The second flaw, which Defendant tacitly acknowledges in his Reply by abandoning the *per se* plain error argument, is that these cases appear to be stale in light of the United States Supreme Court's decision in *United States v. Olano*, 507 U.S. 725 (1993), an opinion which strongly suggests, and other courts have held, that the pre-1993 plain error analysis no longer applies. *See United States v. Meyers*, 280 F.3d 407, 412 (4th Cir. 2002) (The *Olano* Supreme Court made "quite clear that the rights set forth in *Chatman* and *Virginia Erection Corp.* are subject to plain error analysis. Even assuming that [defendant] can meet some of *Olano*'s requirements, he cannot satisfy them all."). Therefore, the Court will not consider whether the mistake that occurred here is a *per se* plain error, warranting the granting of a new trial without a showing of prejudice.

Next the Court will address Defendant's argument that the inadvertent replacement of Juror Number 12 (J.T.) with Juror Number 13 (J.S.) is a "structural error." As support, Defendant cites to *United States v. Curbelo*, a case in which the Fourth Circuit held that a trial court proceeding with only eleven jurors, without stipulation of the defendant or finding of good cause, constituted

a "structural error" under Federal Rule of Criminal Procedure 23(b) and required reversal of the conviction even without a showing of constitutional violation or prejudice. 343 F.3d 273, 281–85 (4th Cir. 2002). As noted in *Curbelo*, structural errors affect the very "framework within which the trial proceeds rather than simply . . . the trial process itself." *Id.* at 281 (quoting *Neder v. United States*, 527 U.S. 1, 8 (1999)). The error in *Curbelo*, depriving a defendant of the verdict of twelve jurors without his consent or any finding of good cause, was deemed to be structural. Here, the Court must reject Defendant's argument based on its inability to find that the principles set forth in *Curbelo* apply to the case at hand.

The Motion asserts that the inadvertent replacement of Juror Number 12 (J.T.) with Juror Number 13 (J.S.) resulted in a violation of Federal Rule of Criminal Procedure 23, which provides that "a jury consists of 12 persons unless this rule provides otherwise." Fed. R. Crim. P. 23(b)(1). The Rule goes on to provide that the parties may stipulate to a jury of less than twelve persons, or may stipulate that a jury of less than twelve persons may return a verdict "if the court finds it necessary to excuse a juror for good cause after the trial begins." Fed. R. Crim. P. 23(b)(2). After the jury has retired to deliberate, "the court may permit a jury of 11 persons to return a verdict, even without a stipulation by the parties, if the court finds good cause to excuse a juror." Fed. R. Crim. P. 23(b)(3). Were the Court to find that it violated Rule 23, then it could, at least in theory, place Defendant's case within the ambit of the *Curbelo* decision and conclude that the trial was infected by a structural error. However, the Court declines to make a finding that a structural error or Rule 23 violation occurred. Twelve jurors, all of whom went through *voir dire* and were found qualified to serve, deliberated in this case and returned a unanimous verdict. Defendant enjoyed all protections mandated by Rule 23, including a jury consisting of twelve qualified persons. Fed.

R. Crim. P. 23(b)(1); *see also* Fed. R. Crim. P. 24(c)(2)(A) ("Alternate jurors must have the same qualifications and be selected and sworn in the same manner as any other juror.").

Rather, the Court is persuaded by the Government's proffer that the mistake made here is a violation of Federal Rule of Criminal Procedure 24(c), which governs the selection and use of alternate jurors. Rule 24(c) provides that alternate jurors may be impaneled in order to replace any jurors who are unable to perform or who are disqualified from performing their duties. Fed. R. Crim. P. 24(c)(1). If proper procedure is followed, alternate jurors replace jurors in the same sequence in which the alternates were selected. Fed. R. Crim. P. 24(c)(2)(B). An alternate juror who replaces a juror has the same authority as the other jurors. *Id.* Because the Court did not adhere to the procedure set by Rule 24(c), it finds that a violation of this rule occurred at the close of Defendant's trial. *See United States v. Merrill*, 513 F.3d 1293, 1308 (11th Cir. 2008) ("We find that when the district court replaced a juror with an alternate for no reason, it erred and violated Rule 24(c)."). Consequently, the Court must now review this violation and determine whether it constitutes a plain error.

II.    **The Error that Occurred at the Close of Defendant's Trial Did Not Violate Defendant's Substantial Rights Nor Did It Seriously Affect the Fairness, Integrity or Public Reputation of Judicial Proceedings**

"A plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Fed. R. Crim. P. 52(b). Although Rule 52 "is relied upon primarily by appellate courts . . . the standards it sets out are controlling when a trial court is passing on a post-trial motion." Wright & Miller, Fed. Prac. & Proc. Crim § 851 (4th ed. 2013); *see also United States v. Frady*, 456 U.S. 152, 179 (1982) (Brennan, J., dissenting) ("Significantly, although some of the Rules of Criminal Procedure appear under headings such as 'Preliminary Proceedings,' 'Trial,' or 'Appeal,' Rule 52(b) is one of the 'General Provisions' of the Rules,

applicable to all stages of all criminal proceedings in federal courts."); *United States v. Young*, No. CR 17-0694-JB, 2020 WL 33086, at *13 (D.N.M. Jan. 2, 2020) (applying Rule 52(b)'s guidance for plain error to motion for new trial). Because the Parties knew the identities of the twelve regular jurors and the two alternates from the selection process, Defendant had a chance to object to the erroneous dismissal of Juror Number 12 (J.T.) but failed to do so. *See United States v. Cotton*, 535 U.S. 625 (2002) (a court "has discretion to remedy a forfeited error provided certain conditions are met.").

The United States Supreme Court has laid out the circumstances in which it may be appropriate for a court to grant relief pursuant to the plain error standard. There are three preliminary considerations and a final guiding principle. "First, there must be an error that has not been intentionally relinquished or abandoned. Second, the error must be plain—that is to say, clear and obvious. Third, the error must have affected the defendant's substantial rights." *Molina Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (internal citations omitted). If all of the three preliminary circumstances apply, the court should then determine if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736 (internal quotations omitted); *see also United States v. Turrietta*, 696 F.3d 972, 977 (10th Cir. 2012) (explaining that, if defendant makes all three of these showings, the court "may exercise discretion to correct the error if it . . . seriously affects the fairness, integrity, or public reputation of judicial proceedings") (quotation omitted). The underlying facts presented by Defendant's Motion show that the first and second requirement have been met. The clerical error that gave rise to Juror Number 13 (J.S.) replacing Juror Number 12 (J.T.) for deliberations went unnoticed by all. Accordingly, the Court finds that Defendant did not intestinally relinquish or abandon his right to object to this arrangement. Moreover, the Court finds that this clerical error resulted in a clear

and obvious violation of Federal Rule of Criminal Procedure 24(c). However, Defendant is unable to meet the third and fourth requirements, and therefore his Motion will be denied.

Defendant contends that his right to have his case decided by a properly constituted jury of his peers was violated and that the participation of Juror Number 13 (J.S.), who was elected foreperson, created a reasonable probability that the outcome of the trial would have been different absent the error. The Court does not agree with Defendant on this point. At trial, Defendant waived his opening statement, exercised his right to remain silent and not testify and chose not to call any defense witnesses.[3] These details, combined with the case law discussed below, convince the Court that he has not met his burden of persuasion with respect to showing prejudice to substantial rights. *See Olano*, 507 U.S. at 734. To establish that prejudice to his substantial rights occurred, Defendant must "show a reasonable probability that, but for the error," the outcome would have been different. *United States v. Dominguez Benitez*, 542 U.S. 74, 76, 82 (2004).

While it does not appear that the Tenth Circuit has issued any decisions directly on point, every other circuit that has addressed a similar scenario has concluded that the defendant did not suffer any prejudice as a result of similar clerical errors. In *United States v. Hamed*, an unpublished decision from the Second Circuit dealing with nearly identical underlying facts, the district court mistakenly identified a juror as an alternate when that juror ("Juror No. 58") sat in the seat intended for one of the alternates. 259 Fed. App'x 377, 377 (2nd Cir. 2008) (unpublished). The defendant objected, but the district court still replaced Juror No. 58 with one of the alternates. In affirming the district court's decision, the Second Circuit held that, while the district court "erred in failing to follow strictly the procedures provided in Rule 24," the defendant failed to establish he was

---

[3]     The Court is well aware that Defendant was under no obligation to put on any evidence, or even have his counsel make an argument on his behalf, at trial. However, these details further demonstrate the lack of reasonable probability that, but for this error, the outcome of his trial would have been different.

prejudiced by the court's error. *See id*. In so holding, the Second Circuit noted that the defendant had not exercised a preemptory challenge to the alternate who replaced Juror No. 58, and that the defendant had not alleged that the district court acted with any sort of impermissible motive. *See id.* Like the *Hamed* defendant, Mr. Capehart does not allege that this Court acted with any impermissible motive in replacing Juror Number 12 (J.T.) with Juror Number 13 (J.S.) for deliberations. Other circuits have held that in cases where trial courts have violated Rule 24 in similar manner did not generate prejudice. *See Merrill*, 513 F.3d at 1308-09 (holding that the defendant failed to establish that he was actually prejudiced by the district court's mistaken dismissal of a juror rather than one of the alternates). Of note is the First Circuit's decision in *United States v. Levesque*, 681 F.2d 75, 80-81 (1st Cir. 1982). In *Levesque*, a juror who was intended as the second alternate was seated instead as the twelfth juror (thereby passing over the other alternate jurors selected before him or her). In affirming the district court, the First Circuit explained, "the person who served as the twelfth juror had fully qualified to serve as a jury and would have been expected to do had vacancies occurred in the regular panel." *Id.* The First Circuit held that the defendant had not established "such prejudice or impact on substantial rights as constitutes cause for reversal." *Id.* at 81.

Defendant's argument that the improperly seated Juror Number 13 (J.S.) had an "apparently powerful influence" that generated a reasonable probability that she could have changed the outcome of the verdict in this case is unsupported speculation. *See United States v. Sivils*, 960 F.2d 587, 593-94 (6th Cir. 1992) (holding that, even though the district court's method for dismissing alternates did not comply with Rule 24(c), the defendants' argument that a different composition would have led to a different outcome was "nothing more than speculative scenarios"); *see also United States v. Gonzalez-Melendez*, 594 F.3d 28 (1st Cir. 2010) ("[E]ven if

a different venire member would have been selected as an alternate juror, there is no basis in the record for concluding that the alternation in jury composition had an injurious influence on the jury."). Defendant's focus on the fact that Juror Number 13 (J.S.) ultimately took on the role of jury foreperson does not change the analysis. The jury system is an institution reflective of this country's democratic ideals, in part because it does not elevate the voice of any one juror, even the foreperson. *See United States v. Wilson,* No. 04-CR-1016-NGG, 2013 U.S. Dist. LEXIS 102823, at *43 (E.D.N.Y. July 22, 2013) (in Final Jury Charge, jurors were instructed that "[o]f course, the foreperson's vote is entitled to no greater weight than that of any other juror."). At the close of Defendant's trial, the jurors and alternates were instructed that:

> Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if convinced that you were wrong. *But do not give up your honest beliefs solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.*

Doc. 142 at 20 (Jury Instruction No. 16) (emphasis added). Defendant provides no evidence that Juror Number 13 (J.S.), or any other juror, failed to follow this instruction or otherwise took actions in violation of their oath. *See United States v. Carter*, 973 F.2d 1509, 1513 (10th Cir.1992) ("We presume jurors will remain true to their oath and conscientiously follow the trial court's instructions."). As the foreperson, Juror Number 13 (J.S.) contributed only one vote to the unanimous verdict, which was swiftly reached.

Finally, the Court makes the additional finding that its error did not seriously affect the fairness, integrity, or public reputation of these judicial proceedings. This fourth and final guiding principle is "an independent inquiry, more appropriately compared with a miscarriage of justice standard under which a claimed error should not be corrected, unless allowing it to stand would be particularly egregious." *United States v. Turrietta*, 696 F.3d 972, 984 (10th Cir. 2012) (internal

quotation omitted).[4] The Tenth Circuit has described the standard as "formidable" saying: "we will only exercise our discretion when an error is particularly egregious and the failure to remand for correction would produce a miscarriage of justice." *United States v. Trujillo-Terrazas*, 405 F.3d 814, 820 (10th Cir. 2005) (internal quotations omitted). The Court is convinced that, given the strength of the Government's evidence, presented via the testimony of numerous lay and expert witnesses, and the fact that the jury deliberated for only a few hours before reaching a unanimous verdict of guilty on all counts, this case presents an instance where the interests of justice would not be served by granting Defendant a new trial.

## Conclusion

**Therefore,** for the reasons discussed in this Memorandum Opinion and Order, Defendant's Motion for a New Trial (Doc. 149) is hereby DENIED.

**IT IS SO ORDERED.**


WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[4]    The *Turrietta* court also notes:

   While the Court has reserved judgment on whether a structural error can automatically satisfy *Olano*'s third, substantial-rights, prong, *see Cotton*, 535 U.S. at 632–33, 122 S.Ct. 1781, it has rejected the proposition that an error can be so grave as to categorically satisfy prong four, which, the Court has stressed, "is meant to be applied on a case-specific and fact-intensive basis." [*Puckett v. United States*, 556 U.S. 129, 142 (2009)].

696 F.3d at 984 n.15. This footnote indicates that were Defendant able to demonstrate that a structural error occurred, he would still need to show that the structural error seriously affected the fairness, integrity, or public reputation of judicial proceedings.